**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Tom Nanstad,

      Plaintiff,

v.

Northern States Power Company
d/b/a Xcel Energy, and Jack Sjoholm,

      Defendants.

Civil No.: 06-3087 (JNE/JJG)

**REPORT AND RECOMMENDATION**

**APPEARANCES**

Christopher Harristhal for Plaintiff

Jonathan Schmidt and Timothy Thornton for Defendants

JEANNE J. GRAHAM, United States Magistrate Judge

    The above-entitled matter came on for hearing before the undersigned Magistrate Judge of the District Court on October 12, 2006, on Plaintiff's Motion to Remand to State Court (Doc. No 4). The case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1. For the reasons discussed herein, the undersigned recommends Plaintiff's motion be granted.

**INTRODUCTION**

    Plaintiff Tom Nanstad ("Nanstad") sued Defendants Northern State's Power Company d/b/a Xcel Energy ("NSP") and NSP Assistant General Counsel, Jack Sjoholm ("Sjoholm") in state court alleging claims of defamation, invasion of privacy, and retaliation for his pursuit of workers' compensation benefits.

Defendants removed this action on the basis of alleged original subject matter jurisdiction under 28 U.S.C. § 1331, stating Plaintiff's claims are "completely preempted" by federal law because they are inextricably intertwined with consideration of the Collective Bargaining Agreement ("CBA") to which NSP is a party. Nanstad now moves this Court for an order remanding the case to state court. Nanstad contends his claims only involve questions of state law, and are not based upon and do not require an interpretation of the CBA.

## II.   RELEVANT FACTS AND ALLEGATIONS

Nanstad, an employee of NSP since 1979, was investigated by his employer in July 2005, after allegations were made that he had stolen over 2,000 feet of copper wire and a padlock from NSP for his personal use. As part of the investigation into the alleged theft, NSP interviewed employees it determined might have knowledge of the alleged events. As a result of the investigation, a report was prepared. At the time of the alleged theft, Mr. Nanstad was already the subject of a disciplinary action arising from his falsification of one of his time sheets. Following the submission of the investigation report regarding the alleged theft of the wire, Mr. Nanstad was terminated by NSP.

International Brotherhood of Electrical Workers, Local Union 953, Eau Claire, Wisconsin, of which Nanstad is a member, challenged NSP's termination of Nanstad, and arbitration proceedings were held pursuant to the requirements of the CBA. After hearing testimony and reviewing the evidence, the arbitrator determined that Nanstad had taken the wire as alleged, but concluded NSP had failed to prove that Nanstad had stolen the wire, in light of evidence presented that Nanstad had the permission of a NSP warehouse foreman to take the wire. The arbitrator determined Nanstad was not a thief, and reinstated Nanstad to his previous position, without back pay.

Nanstad claims the Defendants and their agents communicated to NSP employees and to third parties outside of NSP that he had stolen wire from NSP and that he was a thief. Nanstad's Complaint alleges these statements were false and defamatory, and alleges his privacy was invaded through the dissemination of this false information. Nanstad also alleges he was repeatedly denied the opportunity to file worker's compensation claims pertaining to injuries he claims he suffered while working. Nanstad claims his supervisor, Julie Simon, refused to accept an injury report from him in May 2005, and once told him he was "accident prone." Nanstad alleges his termination by NSP was in actuality a retaliatory discharge for his pursuits of worker's compensation benefits and NSP's attempt to prevent him from pursuing those benefits.

## II   DISCUSSION

The question before the court is one of subject matter jurisdiction. In removing the case to federal court, Defendants asserted federal question jurisdiction on the theory that the Labor Management Relations Act of 1947 § 301, 29 U.S.C. § 185(a) ("LRMA"), completely preempted all of Plaintiff's state law claims. Plaintiff contends this case should be remanded to state court because his state law claims are not completely preempted under section 301 of the LRMA.

### A.   Standard of Review

Although it is the Plaintiff who has brought the instant motion to remand, the party seeking removal and opposing remand has the burden of establishing federal subject matter jurisdiction. *In re Bus. Men's Assurance Co.,* 992 F.2d 181, 183 (8th Cir.1993). When reviewing a motion to remand, a court must resolve all doubts concerning federal jurisdiction in favor of remand. *Id.* However, a district court has no discretion to remand a claim that states a federal question, and the existence of a federal question is an issue

of law. *Gaming Corp. of America v. Dorsey & Whitney,* 88 F.3d 536, 542 (8th Cir.1996) (citations omitted).

      **B.**      **Complete Preemption**

As a general rule a plaintiff can avoid removal to federal court by alleging only state law claims. *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392 (1987). The "well-pleaded complaint rule" requires that a federal cause of action must be stated on the face of the complaint before the defendant may remove the action based on federal question jurisdiction. *Id.* A federal defense, including the defense that one or more claims are preempted by federal law, does not give the defendant the right to remove to federal court. *Id.* at 392-93.

However, "complete preemption" provides an exception to the well-pleaded complaint rule and is different from preemption used only as a defense. Complete preemption can arise when Congress intends that a federal statute preempt a field of law so completely that state law claims are considered to be converted into federal causes of action. *Metropolitan Life Insurance Co. v. Taylor,* 481 U.S. 58, 65 (1987); *Avco Corp. v. Aero Lodge No. 735, Intern. Ass'n of Machinists and Aerospace Workers,* 390 U.S. 557 (1968). To be completely preemptive, a statute must have "extraordinary pre-emptive power," a conclusion courts reach reluctantly. *Metropolitan Life,* 481 U.S. at 65. The term "complete preemption" is somewhat misleading because even when it applies, all claims are not necessarily covered. *Gaming Corp. of America v. Dorsey & Whitney*, 88 F.3d 536, 542 -543 (8th Cir.1996).

Only those claims that fall within the preemptive scope of the particular statute, or treaty, are considered to make out federal questions, *see Metropolitan Life,* 481 U.S. at 64-66, but the presence of even <u>one</u> federal claim gives the defendant the right to remove the entire case to federal court. 28

U.S.C. § 1441 (emphasis added). Complete preemption therefore has jurisdictional consequences that distinguish it from preemption asserted only as a defense. The defense of preemption can prevent a claim from proceeding, but in contrast to complete preemption it does not convert a state claim into a federal claim. *Gaming Corp.*, 88 F.3d at 543.

### C. Nanstad's Claims and the Labor Management Relations Act of 1947

NSP argues Plaintiff's claims are all preempted by section 301 of the LMRA. The LMRA grants federal courts jurisdiction over "[s]uits for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce." LMRA at § 301, 29 U.S.C. § 185(a). The Supreme Court has interpreted section 301 of the LMRA as preempting state-law tort claims in situations where the resolution of the state-law claim substantially depends upon interpreting the terms of the collective bargaining agreement. *See Lingle v. Norge Div., Magic Chef*, 486 U.S. 399, 413 (1988). If the state-law tort claim is founded directly on rights created by the labor contract, or is "inextricably intertwined with consideration of the terms of the labor contract," the state-law tort claim is preempted. *Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 213 (1985). Such claims must be resolved through the grievance and arbitration procedures contained in the collective bargaining agreement or brought under § 301 of the Labor Management Relations Act. *Id.* at 219-20. Defenses, as well as claims, must be considered in determining whether resolution of the state-law claim requires construing the labor contract. *Hanks v. Gen. Motors Corp.,* 859 F.2d 67, 70 (8th Cir.1988).

A claim is not preempted under section 301, however, if its resolution does not require interpretation of the labor contract. *St. John v. Int'l Ass'n of Machinists & Aerospace Workers, Local No. 1010,* 139 F.3d 1214, 1217 (8th Cir.1998). In other words, a claim is not preempted simply because

5

it requires reference to the contract. *Oberkramer v. IBEW-NECA Serv. Ctr., Inc.,* 151 F.3d 752, 756 (8th Cir.1998). Additionally, a claim is not preempted merely because it involves an event in the workplace that may be subject to grievance procedures under a labor contract. *Graham v. Contract Transp., Inc.,* 220 F.3d 910 (8th Cir. 2000).

The Eighth Circuit has addressed whether and when section 301 preempts state-law claims of defamation on a number of occasions. There are essentially two lines of cases with differing views on the breadth of the requirement established by the Supreme Court in *Lingle* that a case be "substantially dependent" upon an interpretation of the CBA in order fall within the meaning of preemption under section 301. Defendants rely on the line of cases that follow the holding in *Johnson v. Anheuser Busch, Inc.,* 876 F.2d 620 (8th Cir.1989). In *Johnson*, the plaintiff was accused of slashing tires on vehicles in the employee parking lot and terminated from his job. Following a grievance procedure, plaintiff was reinstated. The court found that the plaintiff's co-workers' allegedly slanderous statements reporting plaintiff to management and management's allegedly libelous written reports of plaintiff's alleged actions were preempted because "they relate[d] to a dispute over an event occurring at the workplace and ... governed by the grievance procedure." 876 F.2d at 624. The Court determined that the false statements about the plaintiff had served as the basis for the conclusion that plant rules had been violated, which, in turn, served as the basis for the plaintiff's termination. *Id.* Thus, the Court concluded, the claims could not "be resolved without interpreting or analyzing the terms of the collective bargaining agreement." *Id.*

Plaintiff relies upon a second line of cases that apply a narrower approach to the Supreme Court's requirement in *Lingle* that a case be substantially dependent upon an interpretation of the CBA. *See Meyer v. Schnucks Markets, Inc.*, 163 F. 3d 1048 (8th Cir. 1998)(opining that some Eighth Circuit cases, such

as *Johnson*, "do not seem to have applied *Lingle* in an appropriately narrow way"). In these cases, the Eighth Circuit has held that claims based on state law that are intimately related to events at the workplace and could have been taken through the grievance process are not preempted as long as they involve purely factual questions and are not based on provisions of the CBA. *See Id.* An example of one of these cases, *Luecke v. Schnucks Markets, Inc.*, 85 F.3d 356, 359 (8th Cir. 1996), held that a state defamation action was not preempted. Specifically, the Court held Luecke's state law defamation claim was not preempted under section 301, finding "no express or implied ... provision [of the CBA] guides the factual inquiry into whether the speakers actually said [that] Luecke refused to take the [drug] test, whether their statements were false, whether malice attached, and whether damages resulted." *Id.* at 360.

Other Eighth Circuit cases have also held that state-law retaliatory discharge claims are not preempted by the LMRA, because they turn on purely factual questions about the employer's conduct and motives rather than on the scope of the employer's contractual authority to discipline and discharge employees. For example, in *Humphrey v. Sequentia, Inc.,* the plaintiff alleged her discharge was in retaliation for her pursuit of workers compensation benefits under Missouri law. The defendant asserted a defense that there was "just cause" for the discharge under the terms of the CBA, The Court reversed the district court's denial of Plaintiff's motion to remand her retaliatory discharge claim, concluding the controversy between the parties primarily concerned the conduct of the parties and their motivations and finding the asserted defense did not create a basis for LMRA preemption. 58 F.3d 1238, 1244 (8th Cir.1995). This narrower approach to LMRA preemption, which asks only whether the claim itself is necessarily grounded in rights established by a CBA, has been characterized as "more faithful to the Supreme Court's holding in *Caterpillar, Inc., v. Williams*, 482 U.S. 386, 399 (1987) (holding the "well-

pleaded complaint rule" requires that a federal cause of action must be stated on the face of the complaint before the defendant may remove the action based on federal question jurisdiction). *Meyer*, 163 F. 3d at 1051.

This Court is more persuaded by and thus follows the directives of the *Luecke/Meyer* precedents, and concludes that claims based on state law that are intimately related to events at the workplace and could have been taken through the grievance process are not preempted as long as they involve purely factual questions and are not based on provisions of the CBA. Under this standard, it is not enough that the events in question took place in the workplace or that the CBA creates rights and duties similar or identical to those on which the state-law claim is based. Consequently, the undersigned concludes that a claim must require the interpretation of some specific provision of the CBA in order for there to be complete preemption, and declines to follow those cases applying a broader view of the Supreme Court's "substantially dependent" directive in *Lingle*.

### 1. Defamation and Invasion of Privacy Claims

Under these principles, the Court finds Plaintiff's defamation and invasion of privacy claims are not founded upon rights created by the CBA or inextricably intertwined with interpretation of any provision of the CBA. NSP's contentions to the contrary are misplaced. NSP argues the CBA expressly authorizes the discipline and discharge of employees,[1] and that together with section 301 of the LMRA mandate that

---

[1] The NSP CBA states at 4

> The right to employ in accordance with the provisions of this Agreement, promote, discipline and discharge employees and the management of the property are reserved and shall be vested in the Company. The Company shall have the right to exercise discipline in the interest of good service and the proper conduct of its business.

all disputes regarding employee discipline be resolved pursuant to the contractually specified grievance process.[2] NSP asserts the core facts of each of Plaintiff's claims arise from NSP's discipline of Nanstad, and are thus based upon the rights and obligations afforded by the CBA's dispute resolution procedures.

A claim, however, is not preempted simply because it requires reference to the contract. *Oberkramer,* 151 F.3d at 756. "A state law claim may involve analysis of the same set of facts as a claim arising under the collective bargaining agreement without compelling preemption. *Luecke*, 85 F.3d at 359 (quoting *Hanks*, 906 F.2d at 343 citing *Lingle*, 486 U.S. at 407-408). Moreover, a claim is not preempted merely because it involves an event in the workplace that may be subject to grievance procedures under a labor contract. *Graham,* 220 F.3d at 913. In this case, Nanstad has plainly stated that he is not attacking the propriety of any NSP policy or any provision of the CBA. Nanstand's state law claims challenge NSP's dissemination of false and defamatory information to co-employees and to company outsiders.

To prove defamation, Nanstad must prove that a statement was false, that it was communicated to someone besides the plaintiff, and that it tended to harm the plaintiff's reputation and to lower him in the estimation of the community. *Rouse v. Dunkley & Bennett, P.A.,* 520 N.W.2d 406, 410 (Minn.1994). Accusations of criminal wrongdoing constitute defamation per se. *See Anderson v. Kammeier,* 262

---

[2] The NSP CBA states at 3

> All questions, disputes, or controversies under this Agreement shall be settled and determined solely and exclusively by the conciliation and arbitration procedures provided in this Agreement.

N.W.2d 366, 372 (Minn.1977). When a defendant's statements are defamatory per se, general damages are presumed. *Becker v. Alloy Hardfacing & Eng'g Co.,* 401 N.W.2d 655, 661 (Minn.1987). Minnesota recognizes the tort of invasion of privacy, under which two recognized causes of action are relevant in this case: (1) intrusion upon seclusion, which occurs when one "intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns if the intrusion would be highly offensive to a reasonable person, and (2) publication of private facts, where one gives publicity to a matter concerning the private life of another if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public. *See Lake v. Wal-Mart Stores, Inc.*, 582 N.W.2d 231, 233 (Minn.1998) (recognizing three causes of action under the common law tort of invasion of privacy, but expressly declining to recognize a "false-light" cause of action).

The inquiry into the alleged publication of defamatory and private information regarding Nanstad, i.e., that he stole wire from NSP or that he was a thief, is purely a factual inquiry, and will not require Nanstad to argue the meaning of standards or duties created or defined by the CBA. Instead the factual inquiry concerns what was said and to whom, whether the statements were false, and whether the statements would be highly offensive to the reasonable person and not of legitimate concern to the public. These questions about the conduct and motives of NSP employees are not based upon the CBA and will not require the Court to interpret of any provision or term of the CBA.

Of particular importance to the Court is Nanstad's allegation of statements by Defendants and their agents to third parties outside of the employment context. *See* Complaint at ¶¶ 17-18. Defendant incorrectly attempts to distinguish the holding in *Meyer* on the grounds that the employer in *Meyer* publically criticized the plaintiff in that case in retaliation for raising concerns about proper meat sanitation procedures.

10

163 F.2d at 1049. Defendant contends the statements that form the basis of Plaintiff's claims in this case arose from NSP's right to make statements in investigating and disciplining an employee and defending its action in arbitration, and thus were tied to the CBA. However, Plaintiff's Complaint expressly alleges dissemination of false statements to third-parties outside of NSP. *See* Complaint at ¶¶ 17-18. In his Reply brief and again at the hearing, counsel for Plaintiff reiterated that the defamation and invasion of privacy claims in this case concern public dissemination of false statements by Defendants and their agents that Plaintiff is a thief and was fired because he is a thief. Like the plaintiff in *Meyer*, Nanstad's allegations are not based upon the CBA or dependent upon interpretations of its provisions. The allegations instead depend on a factual inquiry into the conduct and motives of Defendants and their agents. *Id.*; *See also Graham,* 220 F.3d 910 (finding that the right to be free from false and harmful statements is a right that is independent of any collective bargaining agreement).

    NSP also contends that it will assert a defense to these claims of qualified privilege, which will require reference to and interpretation of the CBA. NSP argues Plaintiff's defamation claim arises from statements that occurred during the investigation and arbitration proceedings. Thus, NSP concludes, "the key defamation inquiry boils down to whether NSP is contractually entitled to investigate incidents, discipline employees and respond to grievances when there is reason to believe that an employee has stole company property and committed other transgression, [and that s]uch an inquiry turns upon CBA interpretation." Defendant's Memorandum In Opposition at 11-12. NSP argues the discipline process requires investigation, that the CBA requires NSP to state the reasons for its discipline, and that the CBA dispute resolution process, if called upon, then requires NSP to verify the results of its investigation and justify the discipline imposed. NSP contends it was exercising its investigative and disciplinary rights under

11

the CBA at the times relevant to this action, and any inquiry into Plaintiff's defamation claim is substantially dependant upon the disciplinary process specified by the CBA.

The Court, again, disagrees. Plaintiff does not challenge NSP's authority to investigate alleged violations of company policy and discipline employees. Nanstad is challenging Sjoholm and other agents of NSP's right to pass along to others the allegedly false information that he had stolen wire from NSP or that he was a thief. NSP fails to point to any particular provisions of the CBA that specifically address the procedures to be followed in conducting investigations and enforcing policies of NSP. Moreover, the Eighth Circuit has clearly indicated that "while the provisions of the collective-bargaining agreement will perhaps be consulted, they need not be interpreted in order to resolve any qualified privilege defense that [the defendant] may raise in the state defamation proceeding." *Luecke*, 85 F.3d at 361-62 (internal citations and quotations omitted).

For all of these reasons, the Court finds Plaintiff's defamation and invasion of privacy claims, as alleged in the Complaint, do not fall within the reach of complete preemption under section 301 of the LMRA.

### 2. Retaliation Claim

These same principles also guide the Court's determination of whether Plaintiff's retaliation claim is completely preempted providing federal subject matter jurisdiction over all of the claims the Complaint. In *Lingle*, the Supreme Court held that a unionized employee's state law action based on Illinois' tort of retaliatory discharge was not preempted by section 301. *See Lingle,* 486 U.S. at 407. In analyzing whether preemption was appropriate, the Court considered the elements of retaliatory discharge under Illinois law:

> [T]o show retaliatory discharge, the plaintiff must set forth sufficient facts from which it can be inferred that (1) he was discharged or threatened with discharge and (2) the employer's motive in discharging or threatening to discharge him was to deter him from exercising his rights under the [Workers' Compensation Act] or to interfere with his exercise of those rights.

*Id.* at 407 (citations and internal quotations omitted). The employer argued that the employee's retaliation claim was preempted by section 301 because it was inextricably intertwined with a provision in the collective bargaining agreement prohibiting discharge without "just cause." *See id.* at 402. The Supreme Court rejected this argument, finding that the retaliatory discharge claim raised "purely factual questions pertain[ing] to the conduct of the employee and the conduct and motivation of the employer. Neither of the elements requires a court to interpret any term of a collective-bargaining agreement." *Id.* at 407. Thus, the Supreme Court held that "the state law remedy ... is 'independent' of the collective-bargaining agreement in the sense of 'independent' that matters for § 301 pre-emption purposes: resolution of the state-law claim does not require construing the collective-bargaining agreement." *Id.* (footnote omitted); *see also Carlson v. Arrowhead Concrete Works, Inc.*, 375 F.Supp.2d 835, 842 (D.Minn. 2005)(Kyle, J.); *Rosen v. Transx Ltd.,* 816 F.Supp. 1364, 1370-71 (D.Minn.1993).

The Court finds that Nanstad's retaliation claim is not preempted by section 301. The Supreme Court's analysis in *Lingle* is highly instructive. Establishing a claim for workers' compensation retaliation under Minnesota law requires proof of (1) statutorily-protected conduct by the employee; (2) adverse employment action by the employer; and (3) a causal connection between the two. *See Kunferman v. Ford Motor Co.*, 112 F.3d 962, 965 (8th Cir. 1997). Each of these questions are purely factual, and pertain to Nanstad's conduct and the conduct and motivation of NSP employees. It requires no analysis of any provisions or terms of the CBA. *See Lingle,* 486 U.S. at 407; *Meyer,* 163 F.3d at 1051. To

13

defend against a retaliatory discharge claim, an employer must show that it had a nonretaliatory reason for the discharge. *Taubman v. Prospect Drilling & Sawing, Inc.*, 469 N.W.2d 335, 339 (Minn.App.1991) (citing Lingle, 486 U.S. at 407). This purely factual inquiry likewise does not turn on the meaning of any provision of a collective-bargaining agreement. *Id.* Moreover, the possibility that Nanstad could have raised claims under the CBA, but chose not to do so in his Complaint, does not compel a finding that preemption is warranted. *See Caterpillar,* 482 U.S. at 395; *Meyer,* 163 F.3d at 1051; *Hanks,* 906 F.2d at 343, 345. Likewise, that the CBA may have to be referred to in the Complaint of this case does not compel a finding of preemption. *See Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994); *Oberkramer,* 151 F.3d at 756; *Carlson*, 375 F.Supp.2d at 842.

For all of these reasons, the undersigned concludes Plaintiff's state law claims for defamation, invasion of privacy and retaliation are not preempted under section 301 of the LMRA. Consequently, there is no federal question authorizing federal jurisdiction over this case. Accordingly, the case shall be recommended for remand back to the state court from which it was removed.

### D.    **Plaintiff's Request for Costs**

28 U.S.C. § 1447 provides that an order remanding a case to state court may require payment of just costs and any actual expenses, including attorneys' fees, incurred as a result of removal. Plaintiff argues such an award is appropriate in this case because Defendants lacked any objectively reasonable basis for seeking the removal. Plaintiff argues no authority exits to support Defendants' removal of this case, and contends the cases cited by Defendants are completely distinguishable or actually support remand of this matter.

The Court finds Plaintiff's assessment of Defendants' arguments in support of removal overly

critical. While the Court disagrees with Defendants' contention that Plaintiff's claims are all completely preempted under section 301, the Court finds Defendants' have presented an objectively reasonable basis for seeking a federal forum in which to defend this lawsuit. Accordingly, the Court recommends Plaintiff's request of costs and fees be denied.

## III.   RECOMMENDATION

Based upon the foregoing, and having considered the parties' oral arguments, written submissions, and the entire file and record herein, the **IT IS HEREBY RECOMMENDED** that:

(1)   Plaintiff's Motion to Remand to State Court (Doc. No 4) be **GRANTED** and this case be remanded to the state court from which is was removed.

(2)   Plaintiff's request for an order requiring payment of just costs and any actual expenses, including attorneys' fees, incurred as a result of removal be **DENIED**.

Dated: January 16, 2007

                                                        s/ Jeanne J. Graham
                                                        Jeanne J. Graham
                                                        United States Magistrate Judge

Pursuant to D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by February 2, 2007. A party may respond to the objections within ten days after service thereof. Any objections or responses filed under this rule shall not exceed 3,500 words. A District Judge shall make a de novo determination of those portions to which objection is made. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the United States Court of Appeals for the Eighth Circuit. Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.